## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT SANFORD and**<br>**APRIL SANFORD, h/w**<br>2024 Broomall Street<br>Boothwyn, PA  19061<br><br>    *Plaintiffs*<br>  v.<br><br>**FCI ELKTON**<br>8730 Scroggs Rd<br>Lisbon, OH 44432<br><br>  and<br><br>**UNITED STATES OF AMERICA**<br>615 Chestnut Street, Suite 1250<br>Philadelphia, PA 19106<br><br>  and<br><br>**JOHN J. DUNLOP, D.O.**<br>9127 Iriquois Trail<br>Negley, OH 44441-9756<br><br>  and<br><br>**DEBRA GIONNONE, FNP-BC**<br>8730 Scroggs Rd<br>Lisbon, OH 44432<br><br>  and<br><br>**NAPHCARE, INC.**<br>2090 Columbiana Rd. Ste 4000<br>Birmingham, AL 35216<br><br>  and<br><br>**NAPHCARE DOE EMPLOYEES 1–10**<br>2090 Columbiana Rd. Ste 4000<br>Birmingham, AL 35216<br><br>  and | **CASE NO.:** _____<br><br><br>**CIVIL ACTION**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

| | |
|---|---|
| **JOHN AND JANE DOE: CORRECTIONAL OFFICERS 1–10** 8730 Scroggs Rd Lisbon, OH 44432 *Defendants* | |

## COMPLAINT

Plaintiffs, Robert and April Sanford ("Plaintiffs"), by and through their undersigned attorneys, Friedman Schuman Layser, P.C., bring this civil action against Defendants named above, does hereby aver as follows:

### I.    INTRODUCTION

1.    This is a civil rights action arising from events that occurred during the detention of Plaintiff Robert Sanford at the Federal Correctional Institution Elkton (hereafter "FCI Elkton"). Plaintiff brings this action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) for violations of his rights under the Eighth Amendment to the United States Constitution, which prohibits deliberate indifference to the serious medical needs of incarcerated persons.

2.    Plaintiff also brings claims against Defendant United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), 28 U.S.C. §§ 2671–2680, for personal injuries caused by the negligent acts and omissions of employees of the Federal Bureau of Prisons acting within the course and scope of their federal employment.

3.    As set forth more fully below, Defendants repeatedly denied, delayed, and interfered with necessary medical care despite Plaintiff Robert Sanford's escalating symptoms, obvious functional decline, and repeated requests for treatment, resulting in severe and preventable injuries.

4932-5577-0519, v. 1

## II.    JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over Plaintiff's constitutional claims pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States.

5.    Plaintiff's constitutional claims are brought against the individual Defendants pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and *Carlson v. Green*, 446 U.S. 14 (1980), which recognize a cause of action for damages against federal officials who violate the Eighth Amendment through deliberate indifference to an inmate's serious medical needs.

6.    This Court has jurisdiction over Plaintiff's negligence claims against Defendant United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1).

7.    This Court has supplemental jurisdiction over Plaintiff April Sanford's loss of consortium claim pursuant to 28 U.S.C. §1367(a) because that claim arises out of the same case or controversy as Plaintiff Robert Sanford's federal claims.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because Plaintiffs reside in this district and this action is brought against the United States under the Federal Tort Claims Act.

9.    Venue is also proper pursuant to 28 U.S.C. § 1391(e) because Defendant United States of America is an agency of the United States and Plaintiff resides within this district.

10.    Plaintiff is, and at all times relevant hereto was, a resident of Delaware County, Pennsylvania, which is located within the Eastern District of Pennsylvania.

11.    Plaintiff Robert Sanford continues to suffer the physical, emotional, and financial consequences of Defendants' conduct within this district.

3

12.     Plaintiff Robert Sanford receives ongoing medical care and treatment in Pennsylvania for the injuries caused by Defendants' actions and omissions.

13.     A substantial portion of the harm and damages resulting from Defendants' conduct has occurred and continues to occur within this judicial district.

14.     Accordingly, venue is proper in this Court.

## III.    PARTIES

15.     Plaintiffs, Robert Sanford (hereafter "Mr. Sanford") and April Sanford (hereafter "Mrs. Sanford"), are Pennsylvania State residents and currently reside at 2024 Broomall Street, Boothwyn, PA 19061, located in Delaware County, Pennsylvania.

16.     At all times relevant hereto, Plaintiff, Mr. Sanford, was incarcerated within facilities operated by the Federal Bureau of Prisons, including but not limited to defendant FCI Elkton, located in Lisbon, Ohio, and FCI Fort Dix, located in Fort Dix, New Jersey.

17.     Defendant FCI Elkton is a federal correctional institution controlled by the Federal Bureau of Prisons located at 8730 Scroggs Road, Lisbon, OH 44432.

18.     At all times relevant hereto, defendant FCI Elkton was in the custody and control of Mr. Sanford, his medical care, and the medical providers and correctional officers within the institution.

19.     At all times relevant hereto, defendant FCI Elkton was responsible for providing medical care to inmates housed at FCI Elkton.

20.     Defendant, United States of America, is sued pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, for the negligent and wrongful acts and omissions of its employees.

4932-5577-0519, v. 1

21. At all times relevant hereto, the individuals whose acts and omissions form the basis of this action were employees of the Federal Bureau of Prisons, an agency of the United States Department of Justice, and were acting within the course and scope of their federal employment.

22. The Federal Bureau of Prisons owned, operated, controlled, staffed, and was responsible for providing medical care to inmates housed at FCI Elkton and FCI Fort Dix during the time period relevant to this action.

23. Defendant John J. Dunlop, DO (hereafter "Defendant Dunlop") is an adult individual residing at 9127 Iriquois Trail, Negley, OH 44441-9756.

24. At all times material hereto, Defendant Dunlop was employed by FCI Elkton or a third-party medical provider through which the Federal Bureau of Prison contracted for inmate medical care and was at all times acting under the course and scope of his employment.

25. Defendant Dunlop directly participated in Mr. Sanford's medical care or lack thereof. The actions and omissions alleged in this complaint were carried out by Dr. Dunlop and/or carried out with his knowledge, information, consent, or approval in violation of his obligations to the Eighth Amendment to the United States Constitution.

26. Defendant Dunlop is being sued in his individual capacity.

27. Defendant Debra Gionnone, FNP-BC. (hereafter "Defendant Gionnone") is an adult individual employed by FCI Elkton and/or NaphCare, Inc., with a business address of 8730 Scroggs Road, Lisbon, OH 44432.

28. At all times material hereto, Defendant Giannone was employed by FCI Elkton or a third-party medical provider through which the Federal Bureau of Prison contracted for inmate medical care and was at all times acting under the course and scope of her employment.

4932-5577-0519, v. 1

29.     Defendant Gionnone directly participated in Mr. Sanford's medical care or lack thereof. The actions and omissions alleged in this complaint were carried out by Ms. Gionnone and/or carried out with her knowledge, information, consent, or approval in violation of her obligations to the Eighth amendment to the United States Constitution.

30.     Defendant Gionnone is being sued in her individual capacity.

31.     Defendant John and Jane Doe Correctional Officers 1-10 (hereafter "Doe Correctional Officers") were employed by FCI Elkton and at all times of the claims alleged herein, Doe Correctional Officers were acting within the scope of their duties and employment with FCI Elkton and were directly responsible for well-being and medical care of residents under their responsibility. Doe Correctional Officers were all deliberately indifferent to Mr. Sanford's medical needs.

32.     Defendant Naphcare, Inc. (hereafter "Naphcare"), a private healthcare company, contracted with the Federal Bureau of Prisons and specifically FCI Elkton to provide medical services to inmates at FCI Elkton and supervises and implements such care. Naphcare employs doctors, nurses, and other medical providers to implement and supervise care to inmates pursuant to its contract with the Federal Bureau of Prisons.

33.     Naphcare is an Alabama Corporation qualified to do business in Pennsylvania with a registered business address of 2090 Columbiana Rd. Ste 4000 Birmingham, AL 35216. Upon contracting with the Federal Government to provide medical and/or other services to inmates, Naphcare assumed a public function and became legally responsible to comply with all requirements of the United States Constitution. Naphcare is considered a "person" under 42 U.S.C. 1983 and is subject to liability.

34.    Defendants Naphcare Doe Employees 1 through 10 are individuals residing in or around the state of Ohio. At all material times, Naphcare Doe Employees 1 through 10 were licensed in the state of Ohio to provide health care; were agents, employees, and/or subcontractors of Naphcare; were responsible for providing medical care to Plaintiff during his detention, and were acting under the color of Federal Law.

35.    The actions and omissions alleged in this complaint were carried out by the Naphcare Doe Employees 1 through 10 and/or carried out with their knowledge, information, consent, or approval in violation of their obligations to the Eighth Amendment to the United States Constitution.

36.    The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants Naphcare Doe Employees 1 through 10 and Doe Corrections Officers 1 through 10 are currently unknown to Plaintiffs who, therefore sues said Defendants by such fictitious names. Each Defendant designated herein as a Doe is legally responsible in some manner for the events herein complained of, and proximately caused injuries and damages thereby to Plaintiff Mr. Sanford. Plaintiffs will ask leave of the Court to amend this Complaint to insert the true names and capacities of such Defendants when the same have been ascertained and will further ask leave to join said Defendants in these proceedings.

37.    The acts and omissions of all Defendants, as set forth herein, were at all material times pursuant to the actual customs, policies, practices, and procedures of the Federal Bureau of Prisons and/or Naphcare.

IV.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

38.    Plaintiff, Robert Sanford, filed an administrative claim with the U.S. Department of Justice Federal Bureau of Prisons Northeast Regional Office which was accepted and received by the office on April 24, 2025, and given claim number TRT-NER-2025-05793.

39.    Plaintiff's wife, April Sanford, filed her own administrative claim with the U.S. Department of Justice Federal Bureau of Prisons Northeast Regional Office which was accepted and received by the office on April 24, 2025, and given claim number TRT-NER-2025-05804.

40.    Both administrative claims were denied via letter dated September 16, 2025.

41.    Plaintiffs requested reconsideration.

42.    Reconsideration was acknowledged by the U.S. Department of Justice Federal Bureau of Prisons Northeast Regional Office, and both administrative claims were again denied via letter dated December 17, 2025.

43.    This complaint follows.

V.    **SUMMARY OF FACTS**

44.    In 2024, Mr. Sanford was 57 years old and a retired career firefighter from Chester, Pennsylvania. During his career, he was exposed to asbestos and other hazardous materials.

45.    Mr. Sanford was very conscious of his health and received regular medical care prior to his incarceration.

46.    In 2023, Mr. Sanford was incarcerated at FCI Elkton, where he came under the medical care of Defendants John J. Dunlop, D.O., and Debra Gionnone, FNP-BC.

8

47. In October 2023, Mr. Sanford reported his history of asbestos exposure to prison medical staff. No additional imaging, specialist referral, or asbestos-related evaluation was ordered.

48. When Mr. Sanford arrived at FCI Elkton, he was fully ambulatory and able to move about the institution without assistance.

49. Beginning in early 2024, Mr. Sanford developed progressively worsening back pain that had evolved into persistent, severe pain that interfered with his ability to sleep, walk, and perform daily activities within the institution.

50. He regularly sought assistance from Health Services but was not provided with any effective relief or proper diagnostic testing.

51. On March 25, 2024, Mr. Sanford reported to Health Services with significant back pain. An L-spine x-ray demonstrated mild degenerative disc space narrowing and facet arthrosis.

52. Despite continued complaints of severe pain, including documented 10/10 pain, no advanced imaging was obtained.

53. Mr. Sanford continued to report radiating pain, worsening mobility, and difficulty sleeping. No additional tests or treatments were ordered.

54. On May 30, 2024, Mr. Sanford was seen by Defendant Gionnone for escalating pain and functional decline. He reported increasing difficulty walking and sleeping. He was prescribed a steroid pack.

55. At that visit, Mr. Sanford requested advanced imaging, including an MRI. Defendants did not order an MRI or any additional treatments, testing, or pain relief.

4932-5577-0519, v. 1

56.    On July 9, 2024, Mr. Sanford again reported severe right-sided radicular pain and decreased mobility. He reported that he could not walk without taking ibuprofen and continued to experience significant limitations.

57.    Defendants refused to escalate the treatment, testing, and management of his complaints.

58.    On July 24, 2024, Mr. Sanford presented to Health Services and was seen on what was described as an emergent basis by Donald Cavanaugh, PA-C.

59.    Mr. Sanford reported increasing back pain radiating down his right leg to the point that he could barely stand or walk to obtain food.

60.    Despite reporting that prior steroid treatment had been ineffective, another course of steroids was prescribed.

61.    On July 25, 2024, Mr. Sanford arrived at Health Services via wheelchair due to severe pain and difficulty ambulating and was seen by Defendant Gionnone.

62.    He demonstrated difficulty walking and explained that he could not ambulate without support.

63.    Defendant Gionnone confiscated the wheelchair and replaced it with a cane.

64.    Later that same day, Mr. Sanford returned to Health Services due to the unrelenting pain and ineffectiveness of the cane at which time he came under the care of Defendant Dunlop.

65.    This was his third visit to Health Services with escalating complaints of pain in 24 hours.

66.    Defendant Dunlop documented that Mr. Sanford was a "malingerer."

10

67. Instead of ordering advanced imaging, specialty consultation, or hospital evaluation, Defendant Dunlop ordered Mr. Sanford to be placed in the (SHU), solitary confinement.

68. At the time he was ordered to be placed in the SHU, Defendants were aware that Mr. Sanford had repeatedly reported severe and escalating pain, difficulty ambulating, and progressive functional decline. They were also aware of his exposures and predisposition for career-related diseases.

69. No advanced diagnostic testing was ordered before or after his placement in the SHU.

70. On August 1, 2024, Mr. Sanford again presented to Health Services. It was documented that he could not weight-bear on his right leg and was unable to ambulate effectively.

71. Another x-ray of the hip was ordered, and Mr. Sanford was transported to an outside emergency department on the same day due to his inability to ambulate.

72. He was diagnosed with hip osteoarthritis and hip impingement syndrome and advised to follow up with orthopedics. Imaging did not reveal a hip fracture.

73. He was returned to FCI Elkton.

74. On August 2, 2024, Mr. Sanford was seen again by Defendant Gionnone. He reported 10/10 pain and inability to weight-bear and was now using a walker.

75. He again requested an MRI.

76. On August 2, 2024, Defendant Gionnone deliberately delayed the testing and scheduled a consultation request for an MRI with a projected scheduling date of January 31,

11

2025. Nearly six months later and nearly nine months after his initial request for advanced imaging. There were no medical reasons to delay care.

77.     On the evening of August 2, 2024, Mr. Sanford attempted to ambulate using the walker provided to him.

78.     Defendants failed to ensure the walker's safety, despite knowing of Mr. Sanford's vulnerability and need for reliable assistive equipment.

79.     The walker broke, causing him to fall onto his right hip.

80.     Following the fall, Mr. Sanford experienced a sudden and significant increase in pain and was unable to bear weight. Defendants refused to take Mr. Sanford to the hospital.

81.     On August 3, 2024, institutional documentation reflects that Mr. Sanford did not report to the medication line because he was unable to walk. Defendants refused to take Mr. Sanford to the hospital.

82.     Correctional staff requested that medical personnel evaluate Mr. Sanford in his cell. Defendants refused to take Mr. Sanford to the hospital.

83.     Over the next several days, Mr. Sanford remained largely confined to his cell while staff ignored his pleas for help. His right leg became swollen and discolored. Defendants refused to take Mr. Sanford to the hospital.

84.     Despite documented inability to ambulate, visible swelling, and continued severe pain, Mr. Sanford was not transported for hospital evaluation.

85.     There were no documented medical reasons to delay care.

86.     On the morning of August 5, 2024, Defendant Dunlop evaluated Mr. Sanford and noted that he had fallen three days earlier.

12

87. Later that day, after continued deterioration and inability to ambulate, Mr. Sanford was finally transported to the hospital.

88. Upon admission, he was documented as having edema of the entire right leg and imaging revealed extensive occlusive thrombus in the proximal and mid femoral veins, posterior tibial veins, and peroneal veins, with additional non-occlusive thrombus in the distal femoral and popliteal veins "secondary to [his] inability to ambulate", which required urgent reporting and high-dose heparin drip.

89. Imaging of the pelvis and hips revealed an acute, comminuted intertrochanteric and subtrochanteric fracture of the right hip.

90. Mr. Sanford was also diagnosed with a right upper lobe pulmonary embolism.

91. Further diagnostic workup revealed adenocarcinoma of the left lung with metastatic disease.

92. On August 6, 2024, Mr. Sanford underwent emergency open reduction and internal fixation of the right hip.

93. He required anticoagulation therapy and ongoing oncologic treatment.

94. Mr. Sanford was discharged to physical rehabilitation on August 16, 2024.

95. On October 10, 2024, Mr. Sanford was granted compassionate release and returned to Pennsylvania for continued medical care.

96. Mr. Sanford continues to suffer from mobility limitations, chronic pain, and the physical consequences of his fracture and thromboembolic disease.

97. April Sanford continues to take care of her husband while working to support their family.

4932-5577-0519, v. 1

98.    As a result of Mr. Sanford's injuries and physical decline, the marital relationship has been materially altered, including loss of companionship, shared activities, and the normal comforts and society of marriage.

99.    Mr. Sanford's physical limitations have affected his ability to participate in family life and to engage with his children in the manner he previously did.

100.    Defendants' failure to recognize, and refusal to investigate and address Mr. Sanford's increasing back pain throughout his stay and acute injury following the August 2, 2024 fall, violated the standard of care and constituted a deliberate indifference to Mr. Sanford's medical needs.

101.    As a direct result of the combined negligence and deliberate indifference of Defendants from October 2023 through August 2024 and each of them jointly and severally, as described herein, Mr. Sanford failed to receive proper and timely evaluation, pain management, diagnosis, and treatment of the cause of his back pain and subsequent hip fracture and suffered an increased risk of harm causing him to needlessly suffer preventable injuries.

102.    The grievous injuries suffered by Plaintiff are due in no manner whatsoever to any act or failure to act on his part.

103.    As a result of the negligent treatment and care rendered by Defendants, Mr. Sanford suffered the following injuries, conditions, and damages, some of which are permanent:

      a.    An acute, comminuted intertrochanteric and subtrochanteric fracture of the right hip;

      b.    The need for emergency open reduction and internal fixation surgery;

      c.    Severe and prolonged untreated fracture-related pain;

      d.    Extended immobilization following his fall;

      e.    Extensive deep vein thrombosis of the right lower extremity;

14

f.   A pulmonary embolism;

g.   The need for anticoagulation therapy and associated risks;

h.   Chronic hip pain and ongoing mobility impairment;

i.   Ambulatory dysfunction;

j.   Reduced weight-bearing capacity and functional limitations;

k.   Metastatic cancer;

l.   Emotional distress, anxiety, and humiliation associated with being dismissed and left untreated despite inability to ambulate;

m.   Aggravation of his overall medical condition during an already serious and vulnerable stage of illness;

n.   Decreased life expectancy;

o.   Loss of enjoyment of life and diminished quality of life; and

p.   Past and future medical expenses and related costs of care.

## COUNT I
### DENIAL OF MEDICAL CARE 42 U.S.C. §1983 – Deliberate Indifference to Serious Medical Needs
*Plaintiffs v. Defendant John J. Dunlop, D.O.*

104.   Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

105.   At all relevant times, Plaintiff Mr. Sanford was an incarcerated individual entitled to the protections of the Eighth Amendment to the United States Constitution.

106.   The Eighth Amendment prohibits prison officials and medical providers acting under the color of law from acting with deliberate indifference to the serious medical needs of incarcerated persons.

107.   Mr. Sanford suffered from serious medical conditions, including progressively worsening back pain, severe radicular symptoms, inability to ambulate, and ultimately a pathological hip fracture, deep vein thrombosis, pulmonary embolism, and metastatic cancer.

15

108.    Defendants Dunlop, Gionnone, NaphCare Doe Employees 1-10, and Doe Correctional Officers 1-10 were aware of Mr. Sanford's serious medical needs through repeated medical encounters, documented complaints, observable physical deterioration, medical and physical exam findings and requests for care.

109.    Despite this knowledge, Defendants denied, delayed and interfered with necessary medical care including but not limited to:

      a.    Failing to properly evaluate Mr. Sanford's worsening pain complaints;

      b.    Failing to order and/or obtain an MRI;

      c.    Failing to obtain timely advanced diagnostic imaging despite escalating symptoms;

      d.    Failing to refer Mr. Sanford for appropriate specialist evaluation;

      e.    Failing to investigate the cause of Mr. Sanford's worsening neurological and mobility symptoms;

      f.    Failing to respond appropriately to documented complaints of severe pain;

      g.    Failing to escalate treatment when conservative management was ineffective;

      h.    Confiscating Mr. Sanford's wheelchair and replacing it with inadequate mobility assistance despite his inability to ambulate;

      i.    Failing to inspect and maintain mobility equipment essential to inmate safety and medical care, specifically Mr. Sanford's walker;

      j.    Failing to properly evaluate Mr. Sanford following his fall on August 2, 2024;

      k.    Failing to promptly arrange hospital evaluation when Plaintiff Sanford became unable to bear weight; and

      l.    Placing Plaintiff Sanford in solitary confinement rather than providing appropriate medical care after he sought treatment for his worsening condition.

110.    Defendants' actions and omissions were not the result of mere negligence but constituted a deliberate indifference to Mr. Sanford's serious and escalating medical needs.

16

111.   Defendants were aware that failing to provide timely medical care posed a substantial risk of serious harm to Mr. Sanford but consciously disregarded that risk.

112.   As a direct and proximate result of Defendants' deliberate indifference, Mr. Sanford suffered severe and permanent injuries, including a pathological hip fracture, prolonged immobilization, deep vein thrombosis, pulmonary embolism, extensive pain and suffering, and significant loss of quality of life.

113.   As a result of Defendants' unconstitutional conduct, Plaintiff Mr. Sanford is entitled to recover compensatory and punitive damages as permitted by law.

**WHEREFORE,** Plaintiffs, Robert and April Sanford, demands damages from Defendants individually and/or jointly and severally in an amount in excess of the applicable arbitration limits.

## COUNT II
### DENIAL OF MEDICAL CARE 42 U.S.C. §1983 – Deliberate Indifference to Serious Medical Needs
*Plaintiffs v. Defendant Barbra Gionnone, FNP-BC*

114.   Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

115.   At all relevant times, Plaintiff Mr. Sanford was an incarcerated individual entitled to the protections of the Eighth Amendment to the United States Constitution.

116.   The Eighth Amendment prohibits prison officials and medical providers acting under the color of law from acting with deliberate indifference to the serious medical needs of incarcerated persons.

117.   Mr. Sanford suffered from serious medical conditions, including progressively worsening back pain, severe radicular symptoms, inability to ambulate, and ultimately a pathological hip fracture, deep vein thrombosis, pulmonary embolism, and metastatic cancer.

17

118. Defendants Dunlop, Gionnone, NaphCare Doe Employees 1-10, and Doe Correctional Officers 1-10 were aware of Mr. Sanford's serious medical needs through repeated medical encounters, documented complaints, observable physical deterioration, medical and physical exam findings and requests for care.

119. Despite this knowledge, Defendants denied, delayed and interfered with necessary medical care including but not limited to:

      a.    Failing to properly evaluate Mr. Sanford's worsening pain complaints;

      b.    Failing to order and/or obtain an MRI;

      c.    Failing to obtain timely advanced diagnostic imaging despite escalating symptoms;

      d.    Failing to refer Mr. Sanford for appropriate specialist evaluation;

      e.    Failing to investigate the cause of Mr. Sanford's worsening neurological and mobility symptoms;

      f.    Failing to respond appropriately to documented complaints of severe pain;

      g.    Failing to escalate treatment when conservative management was ineffective;

      h.    Confiscating Mr. Sanford's wheelchair and replacing it with inadequate mobility assistance despite his inability to ambulate;

      i.    Failing to inspect and maintain mobility equipment essential to inmate safety and medical care, specifically Mr. Sanford's walker;

      j.    Failing to properly evaluate Mr. Sanford following his fall on August 2, 2024;

      k.    Failing to promptly arrange hospital evaluation when Plaintiff Sanford became unable to bear weight; and

      l.    Placing Plaintiff Sanford in solitary confinement rather than providing appropriate medical care after he sought treatment for his worsening condition.

120. Defendants' actions and omissions were not the result of mere negligence but constituted a deliberate indifference to Mr. Sanford's serious and escalating medical needs.

18

121.    Defendants were aware that failing to provide timely medical care posed a substantial risk of serious harm to Mr. Sanford but consciously disregarded that risk.

122.    As a direct and proximate result of Defendants' deliberate indifference, Mr. Sanford suffered severe and permanent injuries, including a pathological hip fracture, prolonged immobilization, deep vein thrombosis, pulmonary embolism, extensive pain and suffering, and significant loss of quality of life.

123.    As a result of Defendants' unconstitutional conduct, Plaintiff Mr. Sanford is entitled to recover compensatory and punitive damages as permitted by law.

**WHEREFORE,** Plaintiffs, Robert and April Sanford, demands damages from Defendants individually and/or jointly and severally in an amount in excess of the applicable arbitration limits.

## COUNT III
### DENIAL OF MEDICAL CARE 42 U.S.C. §1983 – Deliberate Indifference to Serious Medical Needs
*Plaintiffs v. NaphCare Doe Employees 1-10, and John and Jane Doe Correctional Officers 1-10*

124.    Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

125.    At all relevant times, Plaintiff Mr. Sanford was an incarcerated individual entitled to the protections of the Eighth Amendment to the United States Constitution.

126.    The Eighth Amendment prohibits prison officials and medical providers acting under the color of law from acting with deliberate indifference to the serious medical needs of incarcerated persons.

127.    Mr. Sanford suffered from serious medical conditions, including progressively worsening back pain, severe radicular symptoms, inability to ambulate, and ultimately a pathological hip fracture, deep vein thrombosis, pulmonary embolism, and metastatic cancer.

19

128.    Defendants Dunlop, Gionnone, NaphCare Doe Employees 1-10, and Doe Correctional Officers 1-10 were aware of Mr. Sanford's serious medical needs through repeated medical encounters, documented complaints, observable physical deterioration, medical and physical exam findings and requests for care.

129.    Despite this knowledge, Defendants denied, delayed and interfered with necessary medical care including but not limited to:

a.    Failing to properly evaluate Mr. Sanford's worsening pain complaints;

b.    Failing to order and/or obtain an MRI;

c.    Failing to obtain timely advanced diagnostic imaging despite escalating symptoms;

d.    Failing to refer Mr. Sanford for appropriate specialist evaluation;

e.    Failing to investigate the cause of Mr. Sanford's worsening neurological and mobility symptoms;

f.    Failing to respond appropriately to documented complaints of severe pain;

g.    Failing to escalate treatment when conservative management was ineffective;

h.    Confiscating Mr. Sanford's wheelchair and replacing it with inadequate mobility assistance despite his inability to ambulate;

i.    Failing to inspect and maintain mobility equipment essential to inmate safety and medical care, specifically Mr. Sanford's walker;

j.    Failing to properly evaluate Mr. Sanford following his fall on August 2, 2024;

k.    Failing to promptly arrange hospital evaluation when Plaintiff Sanford became unable to bear weight; and

l.    Placing Plaintiff Sanford in solitary confinement rather than providing appropriate medical care after he sought treatment for his worsening condition.

130.    Defendants' actions and omissions were not the result of mere negligence but constituted a deliberate indifference to Mr. Sanford's serious and escalating medical needs.

20

131. Defendants were aware that failing to provide timely medical care posed a substantial risk of serious harm to Mr. Sanford but consciously disregarded that risk.

132. As a direct and proximate result of Defendants' deliberate indifference, Mr. Sanford suffered severe and permanent injuries, including a pathological hip fracture, prolonged immobilization, deep vein thrombosis, pulmonary embolism, extensive pain and suffering, and significant loss of quality of life.

133. As a result of Defendants' unconstitutional conduct, Plaintiff Mr. Sanford is entitled to recover compensatory and punitive damages as permitted by law.

**WHEREFORE,** Plaintiffs, Robert and April Sanford, demands damages from Defendants individually and/or jointly and severally in an amount in excess of the applicable arbitration limits.

**COUNT IV**
**DENIAL OF MEDICAL CARE 42 U.S.C. §1983 – Policy, Custom, or Practice**
*Plaintiffs v. Defendant FCI Elkton.*

134. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

135. At all relevant times, defendant FCI Elkton housed Mr. Sanford at its facility.

136. Defendant FCI Elkton performed a public function and acted under the color of law for purposes of 42 U.S.C. §1983.

137. At all relevant times, defendant FCI Elkton maintained policies, practices, or customs that resulted in the denial and delay of necessary medical care to inmates.

138. These policies, practices, or customs included, but were not limited to:

    a. Failing to implement adequate protocols for evaluating severe or worsening pain complaints;

    b. Failing to ensure timely diagnostic imaging for patients experiencing progressive neurological symptoms or inability to ambulate;

21

c.    Failing to adequately train and supervise medical personnel providing care to inmates;

d.    Maintaining practices that discouraged escalation of care or specialist referrals;

e.    Failing to inspect and maintain mobility equipment essential to inmate safety and medical care, specifically Mr. Sanford's walker

f.    Failing to implement adequate review or oversight mechanisms when inmates repeatedly sought medical attention for worsening conditions; and

g.    Maintaining policies or customs that prioritized institutional convenience or cost considerations over necessary medical care.

139.    Defendant FCI Elkton knew or should have known that these policies and practices created a substantial risk that inmates would be denied necessary medical care.

140.    Defendant FCI Elkton's policies, customs, and practices were the moving force behind the constitutional violations suffered by Mr. Sanford.

141.    As a direct and proximate result of defendant FCI Elkton's unconstitutional policies, practices, and customs, Mr. Sanford suffered the serious injuries described above.

142.    As a result of Defendant's unconstitutional conduct, Plaintiff Sanford is entitled to recover compensatory and punitive damages as permitted by law.

**WHEREFORE,** Plaintiffs, Robert and April Sanford, demands damages from Defendants individually and/or jointly and severally in an amount in excess of the applicable arbitration limits.

## COUNT V
### DENIAL OF MEDICAL CARE 42 U.S.C. §1983 – Policy, Custom, or Practice
*Plaintiffs v. Defendant NaphCare, Inc.*

143.    Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

22

144. At all relevant times, Defendant NaphCare contracted with the Federal Bureau of Prisons to provide medical services to inmates housed at FCI Elkton.

145. By contracting to provide medical care to incarcerated individuals, defendant NaphCare performed a public function and acted under the color of law for purposes of 42 U.S.C. §1983.

146. At all relevant times, defendant Naphcare maintained policies, practices, or customs that resulted in the denial and delay of necessary medical care to inmates.

147. These policies, practices, or customs included, but were not limited to:

    a. Failing to implement adequate protocols for evaluating severe or worsening pain complaints;

    b. Failing to ensure timely diagnostic imaging for patients experiencing progressive neurological symptoms or inability to ambulate;

    c. Failing to adequately train and supervise medical personnel providing care to inmates;

    d. Maintaining practices that discouraged escalation of care or specialist referrals;

    e. Failing to inspect and maintain mobility equipment essential to inmate safety and medical care, specifically Mr. Sanford's walker

    f. Failing to implement adequate review or oversight mechanisms when inmates repeatedly sought medical attention for worsening conditions; and

    g. Maintaining policies or customs that prioritized institutional convenience or cost considerations over necessary medical care.

148. Defendant NaphCare knew or should have known that these policies and practices created a substantial risk that inmates would be denied necessary medical care.

149. Defendant NaphCare's policies, customs, and practices were the moving force behind the constitutional violations suffered by Mr. Sanford.

150. As a direct and proximate result of defendant NaphCare's unconstitutional policies, practices, and customs, Mr. Sanford suffered the serious injuries described above.

4932-5577-0519, v. 1

151.    As a result of Defendant's unconstitutional conduct, Plaintiff Sanford is entitled to recover compensatory and punitive damages as permitted by law.

**WHEREFORE,** Plaintiffs, Robert and April Sanford, demands damages from Defendants individually and/or jointly and severally in an amount in excess of the applicable arbitration limits.

**<u>COUNT VI</u>**
**FEDERAL TORTS CLAIM ACT - NEGLIGENCE**
*Plaintiffs v. Defendant United States of America*

152.    Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

153.    This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), for injuries caused by the negligent acts and omissions of employees of the Federal Bureau of Prisons acting within the course and scope of their employment.

154.    At all relevant times, employees of the Federal Bureau of Prisons owed Plaintiff a duty to provide medical care consistent with accepted standards of medical practice and correctional healthcare.

155.    Defendant is vicariously liable for the negligent acts and omissions of its actual, apparent and/or ostensible agents, including named Defendants, in connection with the care, evaluation, treatment and management provided to Mr. Sanford during his stay at defendant FCI Elkton, as described more fully above, which consists of one or more of the following:

   a.    Failure to properly evaluate Plaintiff's progressively worsening back pain;

   b.    Failure to timely obtain appropriate advanced diagnostic imaging, including MRI, in the face of escalating symptoms;

   c.    Failure to refer Plaintiff for appropriate specialist consultation despite persistent severe pain and functional decline;

24

d.  Failure to adequately investigate the cause of Plaintiff's worsening radicular symptoms;

e.  Failure to recognize and respond to documented 10/10 pain complaints;

f.  Failure to timely escalate Plaintiff's treatment plan when conservative management proved ineffective;

g.  Failure to provide appropriate mobility assistance in light of Plaintiff's declining functional status;

h.  Failure to properly assess Plaintiff's fall risk in the setting of severe pain and impaired ambulation;

i.  Failure to ensure that assistive devices provided to Plaintiff were safe and functional;

j.  Failure to properly evaluate Plaintiff following his fall on August 2, 2024;

k.  Failure to recognize Plaintiff's inability to ambulate as a sign of serious injury;

l.  Failure to conduct timely diagnostic imaging following Plaintiff's fall;

m.  Failure to timely arrange hospital transfer following documented inability to bear weight;

n.  Failure to appropriately assess and treat Plaintiff's worsening lower extremity swelling;

o.  Failure to prevent prolonged immobilization following suspected fracture;

p.  Failure to initiate timely thrombosis prevention measures in the setting of prolonged immobility;

q.  Failure to recognize the clinical significance of the increased risk of developing thrombosis following prolonged immobility in the setting of suspected fracture;

r.  Failure to timely diagnose and treat Plaintiff's hip fracture;

s.  Failure to timely diagnose and treat Plaintiff's deep vein thrombosis;

t.  Failure to timely diagnose and treat Plaintiff's pulmonary embolism;

u.  Failure to provide timely and appropriate pain management following Plaintiff's fall;

25

4932-5577-0519, v. 1

v.    Failure to follow accepted standards of medical care for evaluation of a non-ambulatory patient;

w.    Failure to respond appropriately to correctional staff requests for medical evaluation;

x.    Failure to adequately document and act upon objective signs of physical decline;

y.    Failure to provide medical care and pain management consistent with accepted standards of correctional medicine; and

z.    Failure to exercise reasonable care under the circumstances.

156.    As a direct and proximate result of the negligence of employees of the Federal Bureau of Prisons, Plaintiff Sanford suffered the injuries and damages described above.

157.    Defendant United States of America is liable for these injuries pursuant to the Federal Tort Claims Act.

**WHEREFORE,** Plaintiffs, Robert and April Sanford, demands damages from Defendants individually and/or jointly and severally in an amount in excess of the applicable arbitration limits.

## COUNT VII
### LOSS OF CONSORTIUM
*Plaintiff April Sanford v. All Defendants*

158.    Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

159.    At all relevant times, Plaintiffs Robert Sanford and April Sanford were lawfully married.

160.    As a direct and proximate result of the negligent acts and omissions of all defendants, Plaintiff Robert Sanford sustained serious and permanent injuries.

161.    As a result of these injuries, Plaintiff April Sanford has been deprived of the services, society, companionship, affection, and consortium of her husband.

26

162.    Plaintiff April Sanford has also been required to provide care and assistance to her husband that would not otherwise have been necessary.

163.    As a direct and proximate result of Defendants' negligence, Plaintiff April Sanford has suffered damages recoverable under law.

**WHEREFORE,** Plaintiffs, Robert and April Sanford, demands damages from Defendants individually and/or jointly and severally in an amount in excess of the applicable arbitration limits.

## VI.    JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Robert Sanford and April Sanford respectfully request that this Honorable Court enter judgment in their favor and against Defendants, and award the following relief:

A.    Compensatory damages in an amount to be determined at trial for the injuries suffered by Plaintiff Robert Sanford, including but not limited to past and future physical pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, and other non-economic damages;

B.    Economic damages including past and future medical expenses, costs of treatment, rehabilitation expenses, and any other economic losses resulting from Defendants' conduct;

C.    Damages for loss of consortium in favor of Plaintiff April Sanford for the loss of the services, society, companionship, affection, and support of her husband;

4932-5577-0519, v. 1

D. Punitive damages against the individual Defendants in an amount sufficient to punish and deter their unconstitutional and reckless conduct;

E. Costs of suit and litigation expenses as permitted by law;

F. Reasonable attorneys' fees, where permitted by applicable law;

G. Pre-judgment and post-judgment interest as allowed by law; and

H. Such other and further relief as this Court deems just and appropriate.

FRIEDMAN SCHUMAN LAYSER, P.C.

Date: May 18, 2026                    By: _____

Derek R. Layser (Atty I.D. #54938)
Caitlin Dryden Groeber (Atty I.D. #330363)
275 Commerce Drive, Suite 210
Fort Washington, PA 19034
P: 215-690-3817/3807
E: dlayser@fsalaw.com
E: cdryden@fsalaw.com
*Attorneys for Plaintiffs*

28

## CERTIFICAITON

Under Federal Rule of Civil Procedure 11, by signing below, I, Derek R. Layser, attorney for Plaintiffs, certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

FRIEDMAN SCHUMAN LAYSER, P.C.

By:  _____

Date: May 18, 2026

Derek R. Layser (Atty I.D. #54938)
275 Commerce Drive, Suite 210
Fort Washington, PA 19034
P: 215-690-3817
E: dlayser@fsalaw.com
*Attorney for Plaintiffs*

29

4932-5577-0519, v. 1